PHILIP A. GASTEIER (State Bar No. 130043)
NATELLA ROYZMAN (State Bar No. 245852)
ROBINSON, DIAMANT & WOLKOWITZ
A Professional Corporation
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 277-7400
Telecopier: (310) 277-7584

Attorneys for Alberta P. Stahl,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>JACK GARRETT,<br><br>     Debtor. | Bk. No. 2:05-12488-TD<br><br>Chapter 7<br><br>**NOTICE OF MOTION AND MOTION TO DISALLOW CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT THEREOF [Claim No. 175]**<br><br><br>Date:  November 18, 2009<br>Time:  11:00 a.m.<br>Place:  Courtroom 1345<br>       Roybal Federal Building<br>       255 East Temple Street<br>       Los Angeles, CA 90012 |

///

///

///

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . .   ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . .    3

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . .    4

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . .    6

      A.   Procedural Requirements For Objection to Claims . . .   6

      B.   Substantive Basis For Objection to Claim . . . . . .    6

           1.   The Claim is Not A Claim Against the Debtor  . .   6

           2.   The Trustee Reserves the Right to Bring An
                Adversary Proceeding to Subordinate the Claim
                Pursuant to 11 U.S.C. § 510(b) . . . . . . . .    7

                a.   The Instrument(s) Issued to the Claimant by
                     Four Star are Securities as Contemplated by
                     11 U.S.C.A. § 510(b) . . . . . . . . . .    8

                b.   The Claim is Based on Damages Arising From
                     the Purchase or Sale of a Security of an
                     Affiliate of the Debtor . . . . . . . . .   12

           3.   The Trustee Reserves the Right to File Further
                Objection to the Amount of the Claim Upon Receipt
                of Additional Information . . . . . . . . . .   14

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . .   15

DECLARATION OF NATELLA ROYZMAN . . . . . . . . . . . . .   16

# TABLES OF AUTHORITIES

CASES                                                                    PAGE(S)

In re Am. Wagering, Inc.,
    493 F.3d 1067 (9th Cir. 2007) . . . . . . . . . . . 8, 9

In re Bankest Capital Corp.,
    361 B.R. 263 (Bankr. S.D. Fla. 2006) . . . . . . . . . . 8

In re Betacom of Phoenix, Inc.,
    240 F.3d 823 (9th Cir. 2001) . . . . . . . . . 7, 9, 12

In re Courtside Village, LLC,
    2003 WL 22764541 (Bankr. N.D. Cal. 2003) . . . . . . . . 11

In re Enron Corp.,
    341 B.R. 141 (Bankr. S.D.N.Y. 2006) . . . . . . . . . . 9

In re Geneva Steel Co.,
    281 F.3d 1173 (10th Cir. 2002) . . . . . . . . . . 12

In re Granite Partners, L.P.,
    208 B.R. 332 (Bankr. S.D.N.Y. 1997) . . . . . . . . . 13

In re Holiday Mart, Inc.,
    715 F.2d 430 (9th Cir. 1983) . . . . . . . . . . . 8

In re JTS Corp.,
    305 B.R. 529 (Bankr. N.D. Cal. 2003) . . . . . . . . . 9

In re Legacy Estate Group,
    05-14659, 2007 WL 3245240 (Bankr. N.D. Cal. Nov. 2, 2007) 8

In re Mid-Am. Waste Sys., Inc.,
    228 B.R. 816 (Bankr. D. Del. 1999) . . . . . . . . . . 8

In re Public Service Co. of New Hampshire,
    129 B.R. 3 (Bankr. D. N.H. 1991) . . . . . . . . . . 13

In re Tedlock Cattle Company, Inc.,
    522 F.2d 1351, 1352 (9th Cir. 1977) . . . . . . . . . 14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                                            PAGE(S)

<u>In re Telegroup, Inc.,</u>
        281 F.3d 133 (3d Cir. 2002) . . . . . . . . . . .  10, 12

<u>In re Touch America Holdings, Inc.,</u>
        381 B.R. 95 (Bankr. D. Del. 2008) . . . . . . . . . 8, 13

<u>Maze v. Sycamore Homes, Inc.,</u>
        230 Cal. App. 2d 746, 41 Cal. Rptr. 338
        (Cal. Ct. App. 1964) . . . . . . . . . . . . . . .  14

<u>PT-1 Communications, Inc.,</u>
        304 B.R. 601 (Bankr. E.D. N.Y. 2004) . . . . . . . . 12

<u>STATUTES</u>

11 U.S.C. § 101(2) . . . . . . . . . . . . . . . . . . . 5

11 U.S.C. § 510(b) . . . . . . . . 1, 4, 7, 8, 9, 10, 12, 13, 14

11 U.S.C.A. § 101(49)(A)(i) . . . . . . . . . . . . . . . 8

<u>RULES</u>

Fed. R. Bankr. P. 3007 . . . . . . . . . . . . . . 2, 6, 15

**TO THE HONORABLE THOMAS B. DONOVAN, UNITED STATES BANKRUPTCY JUDGE;
CLAIMANT GEORGINA ASSET MANAGEMENT, LLC; THE OFFICE OF THE UNITED
STATES TRUSTEE; AND INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that Alberta P. Stahl, the chapter 7 Trustee ("Trustee") for Jack Garrett, debtor herein (the "Debtor"), will and does hereby move this Court for an order disallowing Claim No. 175 (the "Claim") filed by Georgina Asset Management, LLC ("Claimant"), on the grounds set forth in the attached Memorandum of Points and Authorities, which are incorporated herein by reference. A true and correct copy of the Claim is attached to the Declaration of Natella Royzman as Exhibit 175. The Claim is filed as a general unsecured claim in the amount of $1,000,000.

Without limitation, the Trustee objects to the Claim because the Claim is not against the Debtor. In the event that the Claim is not disallowed pursuant to this Motion, the Trustee reserves the right to file further objection to the amount of the Claim upon receipt of additional information, or to bring an adversary to subordinate it pursuant to 11 U.S.C. § 510(b). In support of this Motion, the Trustee further relies on the Declaration of Natella Royzman, the record in this case, and such further evidence and arguments as may be presented to the Court prior to or at the time of hearing.

**PLEASE TAKE FURTHER NOTICE** a hearing on this Motion will be held before the Honorable Thomas B. Donovan, United States Bankruptcy Judge, in Courtroom "1345" United States Bankruptcy Court, 255 East Temple Street, Los Angeles, CA 90012 on November 18, 2009 at 11:00 a.m.

1       **PLEASE TAKE FURTHER NOTICE** that pursuant to Bankruptcy

2 Rule 3007-1(b), any response to the objection must be filed with

3 the Clerk of the Court no later than fourteen (14) days prior to

4 the date of the hearing and served upon the attorneys for the

5 Trustee at the address set forth in the upper left-hand corner of

6 page one of this Notice and Motion.

7       **PLEASE TAKE FURTHER NOTICE** that pursuant to Bankruptcy

8 Rule 3007-1(b), failure to timely file and serve written

9 opposition may be deemed by the Court to be consent to the

10 granting of the relief requested in the objection.

11

12 DATED: October 13, 2009     ROBINSON, DIAMANT & WOLKOWITZ
                                     A Professional Corporation

13

14                        By: _____

15                           PHILIP A. GASTEIER
                          NATELLA ROYZMAN

16                       Attorneys for the Chapter 7 Trustee

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This memorandum sets forth the grounds and supporting legal authorities for the Trustee's objection to the "Claim" filed by the "Claimant" identified in the attached Motion. Defined terms in the Motion shall have the same meaning herein. This section summarizes general objections to claims similar to the Claim. Specific grounds for objection to the Claim are discussed in Section III below.

Some, but not all, Four Star Financial Services, LLC ("Four Star") investors filed claims against the bankruptcy estate of Jack Garrett ("Garrett" or the "Debtor"), even though in every case, their investment was with Four Star and not Garrett. Accordingly, the Trustee is requesting that the claims be disallowed on the grounds that they are not properly claims against Garrett and should not be paid from this estate.

Furthermore, many of the claims were filed for amounts in excess of the amounts invested or the losses incurred. The Trustee has obtained information from the Chapter 7 Trustee of Four Star to support the accurate amounts of the claims for investment in Four Star. Thus, even if the claims were properly allowed as against Garrett, they should only be allowed in the reduced amount.

Some Four Star investors filed claims as secured claims, even though they received no grant of a security interest in Garrett's assets. Even had the Four Star investor been granted a security interest in the assets of Four Star, that

1   would not provide them with a security interest in the assets of
2   Garrett.

3           For these reasons, as well as any additional grounds
4   discussed below, the Claim should be disallowed as a claim in
5   this estate.

6           In addition, although not a ground for objection in
7   this Motion, the Trustee reserves the right to bring an adversary
8   action to subordinate any allowed claims filed by the Four Star
9   investors pursuant to 11 U.S.C. § 510(b).  Subordination of
10  claims like the Four Star investor claims, which are based on
11  damages in connection with the purchase of a "security," is
12  mandatory.  As discussed further below, the term "security" is
13  broadly defined in the Bankruptcy Code to encompass the
14  instruments around which the Claim is based.  Thus, if the claims
15  are allowed at all, the Trustee intends to bring an adversary on
16  the grounds that they must be subordinated.

17

18                                  **II.**

19                         **STATEMENT OF FACTS**

20          On October 24, 2003, an involuntary bankruptcy petition
21  was filed against Four Star under Chapter 11 of the Bankruptcy
22  Code.  On March 18, 2004, the case was converted to one under
23  Chapter 7 of the Bankruptcy Code and Richard A. Marshack was
24  appointed as the Chapter 7 Trustee (the "Four Star Trustee").
25  Based on the Four Star Trustee's analysis, Four Star, which
26  basically operated a Ponzi scheme, originally factored
27  receivables for companies operating 900 number services, and
28  subsequently diversified into the sale and resale of telephone

1  time, auto loans, internet pornography, loans, and other
2  investments.

3        On November 1, 2004, Garrett filed a voluntary petition
4  for relief under Chapter 11 of the Bankruptcy Code in the United
5  States Bankruptcy Court for the Southern District of Florida.
6  Subsequently, pursuant to the Four Star Trustee's Motion to
7  Transfer Venue based on Garret's status as an affiliate of Four
8  Star, Garrett's bankruptcy case was transferred to the United
9  States Bankruptcy Court for the Central District of California by
10  Order entered on December 21, 2004.  The Debtor's bankruptcy case
11  is presently pending as In re Jack Garrett, Case No. LA 05-12488-
12  TD.  The Bankruptcy Court ordered conversion of the case to a
13  Chapter 7 case by order entered on April 7, 2005.  Alberta P.
14  Stahl (the "Trustee") was appointed as chapter 7 Trustee on or
15  about April 14, 2005.

16        Based on pleadings on file with this Court, Garrett is
17  and has been found to be an "affiliate" of Four Star as that term
18  is defined in 11 U.S.C. § 101(2).  Four Star's Amended Operating
19  Agreement indicates that Garrett owned and controlled fifty
20  percent of the voting power in Four Star.  According to the Four
21  Star Trustee, at the time of its bankruptcy filing, Four Star's
22  managing members were Ronald Anson and Garrett.  The Trustee is
23  informed and believes that Garret is also an affiliate of Four
24  Star's related entity 900 Capital Services, Inc. by virtue of his
25  interest in that entity.
26  ///
27  ///
28  ///

## III.

### ARGUMENT

### A.  Procedural Requirements For Objection to Claims

Rule 3007 of the Federal Rules of Bankruptcy Procedure governs the procedure for objection to claims and provides:

> An objection to the allowance of a claim shall be in writing and filed.  A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession . . . at least thirty days prior to the hearing.

Fed. R. Bankr. P. 3007.  Pursuant to Rule 3007, a copy of the Motion has been served upon the Claimant at the address set forth in the Claim, as well as their last known address, and upon the Debtor at least thirty (30) days prior to the hearing date set by the Court for consideration of the Motion.  Thus, the Trustee has complied with Rule 3007.

### B.  Substantive Basis For Objection to Claim

#### 1.  The Claim is Not A Claim Against the Debtor

The Trustee respectfully submits that the Claim should also be denied on the grounds that it is not properly a claim against the Debtor.  The Claim is based on investments with Four Star Financial Services or a related entity, evidenced by an agreement with and/or statements from Four Star or such entity, not the Debtor.  Nothing in the Claim or attachments to the Claim demonstrates any basis for asserting that it is against the Debtor personally.  Although in some cases the Debtor signed the agreements, it is clear that he did so only on behalf of Four Star.  There is no evidence in the Claim or attachments to the

Claim indicating that the Debtor personally guaranteed any of Four Star's promises or otherwise assumed any personal liability. Thus, there is no basis for asserting that the Debtor is liable on the Claim, and it should be disallowed as a claim in this estate.

**2.    The Trustee Reserves the Right to Bring An Adversary Proceeding to Subordinate the Claim Pursuant to 11 U.S.C. § 510(b)**

In the event that the Court determines that the Claim is valid and allowable in this estate, the Trustee reserves the right to bring an adversary action to subordinate the Claim pursuant to 11 U.S.C. § 510(b) based upon the grounds set forth below.

The Claim is based on damages arising from the Claimant's participation in Four Star, an affiliate of the Debtor. As such, the Claim is subject to 11 U.S.C. § 510(b), which provides:

> For the purpose of distribution under this title, <u>a claim</u> arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, <u>for damages arising from the purchase or sale of such a security</u>, or for reimbursement or contribution allowed under section 502 on account of such a claim, <u>shall be subordinated</u> to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (emphasis added).  Subordination of claims under this section is mandatory.  <u>In re Betacom of Phoenix, Inc.</u>, 240 F.3d 823, 827 (9th Cir. 2001).

One of the purposes of Section 510(b) is to "prevent disappointed shareholders, sometimes the victims of corporate

1 fraud, from recouping their investment in parity with unsecured

2 creditors." In re Am. Wagering, Inc., 493 F.3d 1067, 1071-2

3 (9th Cir. 2007). It is based on "[t]he principles behind

4 corporate and bankruptcy laws, [which] do not favor shifting the

5 risk of loss from shareholders to creditors, even if the

6 shareholders are blameless." Id. However, "the rationale for §

7 510(b) is not limited to preventing shareholder claimants from

8 improving their position vis-a-vis general creditors; Congress

9 also made the decision to subordinate based on risk allocation."

10 In re Mid-Am. Waste Sys., Inc., 228 B.R. 816, 826 (Bankr.

11 D. Del. 1999).

12     **a.**   **The Instrument(s) Issued to the Claimant by**

13         **Four Star are Securities as Contemplated by**

14         **11 U.S.C.A. § 510(b)**

15     The term "security" as used in § 510(b) is expansively

16 defined to cover much more than ownership of stock in a company.

17 Simply put, "Section 510(b) is not limited to shareholder

18 claims." In re Touch America Holdings, Inc., 381 B.R. 95, 103

19 (Bankr. D. Del. 2008). The term "security" is defined in the

20 Bankruptcy Code to include notes, bonds and debentures. 11

21 U.S.C.A. § 101(49)(A)(i) ; see also In re Holiday Mart, Inc., 715

22 F.2d 430, 434 (9th Cir. 1983); In re Bankest Capital Corp., 361

23 B.R. 263, 267 (Bankr. S.D. Fla. 2006) ("The unambiguous language

24 of the statute specifically *includes* debt securities such as

25 promissory notes."); In re Legacy Estate Group, 05-14659, 2007 WL

26 3245240 (Bankr. N.D. Cal. Nov. 2, 2007) (a promissory note the

27 claimant was fraudulently induced to accept in exchange for

28 release of the claimant's claim against the debtor was a

"security" for purposes of section 510(b)). Even options to
purchase stock are deemed "securities" for purposes of the
subordination provision of the bankruptcy code. See In re Enron
Corp., 341 B.R. 141, 150 (Bankr. S.D.N.Y. 2006).

Cases demonstrate that whether a note or any other form
of investment instrument is a security for purposes of 510(b) is
primarily dependent on whether the claimant's expectation for
return payment was more in the nature of that of an investor than
that of a creditor. For example, in In re Betacom of Phoenix,
Inc., 240 F.3d 823 (9th Cir. 2001), the Ninth Circuit found that
"the dissimilar risk and return expectations of investors and
creditors" should be taken into account in determining the
standard for mandatory subordination. Id. at 829. The Court
further explained that an investor enters into an agreement with
greater financial expectations than creditors because while a
"creditor can only recoup her investment[,] the investor expects
to participate in firm profits." Id. at 830. Following
Betacom's rationale, the Ninth Circuit later held in In re
American Wagering, Inc., 493 F.3d 1067 (9th Cir. 2007), that an
agent who did not receive his promised compensation pursuant to
an employment agreement had a fixed, pre-petition debt due and
owing to him as a creditor, "not the risk/return position of an
equity investor in the now-bankruptcy corporation." Id. at 1073;
see also In re JTS Corp., 305 B.R. 529, 545 (Bankr. N.D. Cal.
2003) (where "the claimant's expectations were those of an
investor rather than a creditor, then subordination is more
likely to serve the goal of the statute.").
///

The Trustee has identified five representative types of instruments or agreements Four Star's investors received: (1) Cash Flow Note (2) Investment Agreement, (3) Investor Agreement, (4) Subscription Agreement, and (5) Participation Agreement.  See Exhibit A to the Royzman Declaration for samples of each type. Where, as here, a claim is based on an instrument for which the potential return is dependent on the profits of the enterprise or a specific endeavor of the enterprise, it is clear that the investor parted with his or her money in the expectation of *participating* in the success of that enterprise.  It is this participatory aspect which separates out the investor's purchase of a security (which is subject to subordination under 510(b)) from the claim of a trade creditor or a lender on fixed terms. See In re Telegroup, Inc., 281 F.3d 133, 142 (3d Cir. 2002) ("because claimants retained the right to participate in corporate profits if Telegroup succeeded, we believe that § 510(b) prevents them from using their breach of contract claim to recover the value of their equity investment in parity with general unsecured creditors.").

Although there are some variations within the representative types of instruments Four Star issued investors, in every case they evidence an agreement to participate in Four Star's earnings.  For example, Provision 3 of the "Cash Flow Note" provides that "interest and any payable principal shall be payable . . . only if and to the extent of available cash flow of 4 Star is sufficient to pay the interest due to Lender and all other holders of Cash Flow Notes."  Driving this point home, provision 5 of the Cash Flow Note further provides that Four Star

shall not be obligated to repay principal and/or interest "to the extent that said payment would render 4 Star unable to pay its current obligations or would otherwise violate covenants with third party non-cash flow based lenders." The "Investment Agreement," each version of which explicitly refers to an investment Four Star would make with the principal invested, provides that payments to the "Investor" will be made "out of first money received from said investment," or that the "Investor" shall receive all earnings from the Acceptable Investment" up to a maximum yield. Similarly, the "Investor Agreement" states that the "Investor" shall be paid "out of income generated by 900" Capital Services. Perhaps even more explicit is the "Subscription Agreement," which offers membership units pursuant to a Private Placement Memorandum, which entitle investors to "certain distributions payable from Available Cash from Operations." Finally, the Participation Agreement provides that the "Participant" is "to receive first monies allocable to Participant's percentage."

Thus, the instrument or instruments from which the Claim arises reveal that the transaction was not the typical credit transaction. The agreement between the Claimant and Four Star was not a promise to pay interest on a loan so much as a promise to pay based on the success of a particular enterprise. A return based on the success of an investment is a hallmark of a security. See In re Courtside Village, LLC, 2003 WL 22764541 (Bankr. N.D. Cal. 2003) (finding that despite being called "soft notes," notes which provided that payment of the principal or interest would be made "only if and to the extent that Funds are

available," were actually "equity interest profit participations."). By bargaining for the opportunity to participate in Four Star's profits, the Claimant was more akin to an investor than a creditor. Accordingly the Claim involves a "security" as contemplated by Section 510(b).

### b. The Claim is Based on Damages Arising From the Purchase or Sale of a Security of an Affiliate of the Debtor

Although Section 510(b) refers to "a claim arising from rescission of a purchase or sale of a security," it is not limited to claims based on securities fraud. In re Betacom of Phoenix, Inc., 240 F.3d 823, 828 (9th Cir. 2001). The section has been interpreted broadly by courts to require only that there is "some nexus or causal relationship between the claim and the sale [or purchase] of the security." In re Telegroup, Inc., 281 F.3d 133, 138 (3d Cir.2002). Courts have interpreted § 510(b)'s reach to apply to a broad range of claims, requiring subordination of not only claims for damages arising from fraud in the issuance of securities, but also damages based on fraudulent retention, and even damage claims for breach of contract and other tortious conduct. See PT-1 Communications, Inc., 304 B.R. 601, 607-610 (Bankr. E.D. N.Y. 2004) (finding that a claim based on tortious interference with injured shareholder's ownership interest should be subordinated even though there was no issuance of stock to injured party); In re Betacom of Phoenix, Inc., 240 F.3d at 823 (applying § 510(b) to a breach of contract claim seeking damages for failure to convey the debtor's stock as required under merger agreement); In re Geneva Steel Co., 281

F.3d 1173 (10th Cir. 2002) (applying § 510(b)to a claim for damages based on post investment misrepresentations that allegedly caused the investor to hold on to the debtor's stock rather than sell it); In re Public Service Co. of New Hampshire, 129 B.R. 3, 4 (Bankr. D. N.H. 1991) (noting that the language of 510(b) is broad enough to include breach of contract and related actions in addition to claims based on securities fraud).

Given this broad interpretation, it is irrelevant whether the Claim is based on damages arising from some form of tort or breach of contract, or even breach of fiduciary duties. See In re Touch America Holdings, Inc., 381 B.R. 95, 106 (Bankr. D. Del. 2008) (finding that although the complaint on which a claim was based sought damages for breach of fiduciary duties, section 510(b) applied to subordinate the claim because the gist of the litigation was to recover damages based upon the lost value of stock). Similarly, it is irrelevant whether the claim is based on damages from the purchase of the security or the retention of the security. See In re Granite Partners, L.P., 208 B.R. 332 , 339 (Bankr. S.D.N.Y. 1997) (reading § 510(b) to require only that the purchase or sale of a security "be part of a causal link[,] although the injury may flow from a subsequent event"). The clear and pivotal fact is that the Claim is for damages surrounding the sale or purchase of a "security." Thus, regardless of how the damages claimed are characterized, there is still a clear underlying nexus between the Claim and the purchase or sale of a "security." Therefore, if the Claim is allowed at all, it should be subordinated to all claims of senior or equal

///

1  rank, including general unsecured claims, pursuant to 11 U.S.C. §
2  510(b).

3      Based upon the above authority, if the Claim is not
4  disallowed pursuant to this Motion, the Trustee intends to bring
5  an adversary action against the Claimant to seek mandatory
6  subordination of the Claim.  Accordingly, if the Claim is
7  allowed, the Claimant is encouraged to contact counsel for the
8  Trustee to work out a stipulation for expeditious handling of the
9  issue of subordination in an adversary proceeding.

10     **3.**   **The Trustee Reserves the Right to File**
11              **Further Objection to the Amount of the Claim**
12              **Upon Receipt of Additional Information**

13     The Claim is filed in the amount of $1,000,000.  The
14  Trustee believes it is possible that the Claimant included
15  accrued interest and/or principal repaid by Four Star in this
16  amount.  The Trustee asserts that interest and/or repaid would
17  not be allowable as a claim in this estate even if the balance of
18  the claim is allowed.  As discussed above, the Trustee submits
19  that the investments with Four Star were purchases of securities
20  and that related claims are subject to subordination.  However,
21  should any investment be found to be a loan based on a fixed
22  return rate, it is clear that the interest rate is usurious and
23  that any claim for interest must be disallowed.  See <u>Maze v.</u>
24  <u>Sycamore Homes, Inc.</u>, 230 Cal.App.2d 746 (1964).  Morever, such
25  additional amounts may not properly be included in damages.  <u>See</u>
26  <u>In re Tedlock Cattle Company, Inc.</u>, 522 F.2d 1351, 1352 (9th Cir.
27  1977) (defrauded investors were limited to a claim for their
28  original investment and could not receive the benefit of their

bargain). Thus, the Claim should be allowed, if at all, only in the amount of principal invested by the Claimant with Four Star less amounts repaid. As of the date of this Motion, the Trustee has not been able to obtain information necessary to identify such amounts from Four Star. Accordingly, should any claim be allowed in favor of the Claimant, the Trustee reserves the right to file a further objection to the amount of the Claim upon receipt of additional information.

## IV.

### CONCLUSION

For all of the reasons set forth herein, the Trustee submits that this Motion complies with Fed. R. Bankr. P. 3007 and Local Bankruptcy Rule 3007-1. Accordingly, the Trustee respectfully requests that the Court enter an order providing that the Claim is disallowed in its entirety.

DATED: October 13, 2009    ROBINSON, DIAMANT & WOLKOWITZ
A Professional Corporation

By: _____
      PHILIP A. GASTEIER
      NATELLA ROYZMAN
    Attorneys for Chapter 7 Trustee

## DECLARATION OF NATELLA ROYZMAN

I, NATELLA ROYZMAN, declare as follows:

1.    I am an attorney at law, duly licensed to practice before this Court.  I am an associate of the Law Firm of Robinson, Diamant & Wolkowitz, A Professional Corporation, counsel for Alberta P. Stahl, the duly-appointed, qualified, and acting Chapter 7 trustee in the above-captioned bankruptcy case. All of the following facts are within my personal knowledge and are facts to which I could and would competently testify if called as a witness in this matter.

2.    This Declaration is made in support of the foregoing Motion.  Defined terms in the Motion shall have the same meaning herein.

3.    Attached hereto as <u>Exhibit 175</u> is a true and correct copy of the Claim of Georgina Asset Management, LLC, entered on the Claims Register as Claim No. 175.

4.    On April 6, 2009, I sent a letter to the Claimant requesting additional documentation in support of the Claim. Attached hereto as <u>Exhibit A</u> is the Claimant's response to my letter.

5.    From my review of the Claims, I have identified five representative types of instruments or agreements Four Star issued investors: (1) Cash Flow Note; (2) Investment Agreement; (3) Investor Agreement; (4) Subscription Agreement; and (5)

///

///

///

Participation Agreement.  A true and correct copy of a sample of each type of agreement is Attached hereto as Exhibit B.

Executed under penalty of perjury under the law of the United States of America this _13th_ day of October, 2009 at Los Angeles, California.

_____
NATELLA ROYZMAN

# EXHIBIT 175

MRR/00178451.WPD/MISC/00005.000

| **United States Bankruptcy Court**     **Central District of California** | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor<br>GARRETT, JACK | Case Number<br>LA 05-12488-TD |
|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

*Georgina Asset Management, LLC*

Name and address where notices should be sent:

*Georgina Asset Management, LLC*
*270 18th Street.*
*Santa Monica, CA 90402-2404*

Telephone number: *310-395-2679*

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

*FILED*
*SEP 17 2007*

This space is for Court use only.

Last four digits of account or other number by which creditor identifies debtor:

Check here if this claim ☐ replaces ☑ amends a previously filed claim, dated: *5/31/05*

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
  Last four digits of your Social Security number: _____
  Unpaid compensation for services performed
  from _____ to _____
      (date)       (date)

**2. Date debt was incurred:** *9/14/01, 10/9/01*

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ *1,000,000*_____ $_____ $_____ $ *1,000,000*
                         (unsecured)     (secured)     (priority)     (Total)

If all or part of your claim is secured or entitled to priority, also complete item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
- ☐ Real Estate    ☐ Motor Vehicle
- ☐ Other _____

Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any $ _____

**6. Unsecured Nonpriority Claim.** $ *1,000,000*
☑ Check this box if (a) there is no collateral or lien securing your claim, or (b) your claim exceeds the value of the property securing it or (c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.
Amount entitled to priority $ _____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
- ☐ Up to $2,425* of deposits toward purchase, lease or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☐ Domestic support obligations under - 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8*

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This space is for Court use only.

| Date<br>*8/28/07* | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>*Robert H Lipp*<br>*Managing Principal* |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

CCD-B10

**EXHIBIT 175**

00018

# EXHIBIT A

April 15, 2009

Natella Royzman, Esq.
Robinson Diamant Wolkowitz
1888 Century Park East
Suite 1500
Los Angeles, CA 90067

Re: Jack Garrett
    Chapter 7 Bankruptcy Case No. LA 05-12488-TD

Dear Ms. Royzman:

    Per your request, enclosed are copies of the subscription documents and supporting documentation for the following claims:

- Claim #74 – Lipp Irrevocable Trust FBO Andrew Lipp
- Claim #99 – Avi Lipp Trust
- Claim #100 – Ariana Lipp Trust
- Claim #107 – Debra Lipp
- Claim #175 – Georgina Asset Management, LLC
- Claim #176 – Georgina Asset Management, LLC

With regards to the following claims:

- Claim #80 – Georgina Asset Management, LLC: We have enclosed a copy of the documentation that outlines each step of the transaction confirming the investment.
- Claim #81 and Claim #82 – Georgina Asset Management, LLC: We have enclosed a copy of the subscription documents for the initial investment. Please note that this agreement pertains to both claims. We have included the original ending statements for both.

    As you can see from the attached and original documentation submitted with all claims, each claim is fully supported. The fact that some documentation may be missing due to the lengthy time from the original investment should have no bearing on the validity and rightful recovery on these claims. Further, Jack Garrett and/or the receiver for Four Star Financial Services, LLC should have all documentation you may require to further substantiate these investments.

    If you should have any further questions, or plan to object to any of the claims please contact us at 310-395-2679.

Regards,

Robert H. Lipp
Managing Principal

**EXHIBIT A**

LAW OFFICES

# ROBINSON, DIAMANT & WOLKOWITZ

A PROFESSIONAL CORPORATION

LAWRENCE A. DIAMANT
JEREMY W. FAITH
TODD A. FREALY
PHILIP A. GASTEIER
IRV M. GROSS
DOUGLAS D. KAPPLER
NATELLA ROYZMAN
MARIA CARMELA Z. PAGAY
EDWARD M. WOLKOWITZ
TIMOTHY J. YOO

1888 CENTURY PARK EAST, SUITE 1500
CENTURY CITY
LOS ANGELES, CALIFORNIA 90067
(310) 277-7400
FAX (310) 277-7584

GILBERT ROBINSON
(1927-1991)
ELLIOTT LISNEK
(1939-1992)

March 24, 2009

OUR FILE NUMBER

18076

Susan Novick, Trustee
Lipp Irrevocable Trust
10573 W. Pico Blvd. #65
Los Angeles, CA 90064

RE:     **In re Jack Garrett** ("Debtor")
        Chapter 7 Bankruptcy Case No. LA 05-12488-TD

Dear Ms. Novick:

This firm represents Alberta P. Stahl, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of the above-referenced Debtor in the bankruptcy case presently pending in the Los Angeles Division of the United States Bankruptcy Court.

The Trustee is in the process of reviewing and analyzing claims that have been filed in the Debtor's bankruptcy case. You filed a claim in this matter on behalf of Lipp Irrevocable Trust in the amount of $83,712.13, which was entered on the Court's Claims Register on May 26, 2005 as Claim No. 74.

The documentation you attached to your proof of claim is insufficient. The Trustee requires documentation supporting the basis of your claim in order to fully evaluate its merits. Please provide this office with additional documentation regarding your claim, including, but not limited to, any written agreements or instruments you received in exchange for your payment, such as cash flow notes or investment agreements. If we are not in receipt of the requisite supporting documentation within two weeks from the date of this letter, the Trustee will have no alternative but to file an objection to your claim.

Please contact me should you have any questions or comments regarding the foregoing.

Very Truly Yours,

Natella Royzman

NR/00194601.WPD/LTR/18076.000

00020

FORM B10 (Official Form 10)(04/04)

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor | Case Number |
|---|---|
| GARRETT, JACK | LA 05-12488-TD |
| | Credit id: 1011 |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
LIPP IRREVOCABLE TRUST

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and Address where notices should be sent:

LIPP IRREVOCABLE TRUST
FBO ANDREW MARK LIPP
10573 W PICO BL. 65
LOS ANGELES, CA 90064-2333

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone Number: 310-836-9907

THIS SPACE IS FOR COURT USE ONLY

05-12488-TD
1011

Account or other number by which creditor identifies debtor:

Check here if ☐ replaces ☐ amends a previously filed claim, dated:_____
this claim

| 1. Basis for Claim | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U.S.C. §1114(a) |
| ☐ Services performed | ☐ Wages, salaries, and compensation (fill out below) |
| ☑ Money loaned | Last four digits of SS #:_____ |
| ☐ Personal injury/wrongful death | Unpaid compensation for services performed |
| ☐ Taxes | from _____ to _____ |
| ☐ Other _____ | (date)          (date) |

| 2. Date debt was incurred: | 3. If court judgment, date obtained: |
|---|---|
| 3/28/01 | |

4. Total Amount of Claim at Time Case Filed: $ 83,712.13
(unsecured)     (secured)     (priority)     83,712.13 (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle
☐ Other_____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $ 83,712.13
☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4).
☐ Up to $ 2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

000681

00021

**Four Star Financial Services, LLC.**

**11755 Wilshire Blvd, Suite 1350**

**Los Angeles, California 90025**

## Statement of Account

Lipp Irrevocable Trust FBO Andrew Mark Lipp, DTD 6/20/95
Susan Novick, Trustee
10573 West Pico Blvd. #65
Los Angeles, CA 90064

| | | |
|---|---|---|
| **Balance Forward** | 03/31/03 | 81,895.58 |
| COMPOUND | | 1228.43 |
| DEPOSIT | | 588.12 |
| **Ending Balance** | 04/30/03 | 83,712.13 |

00022

# SIGNATURE PAGE TO AMENDED AND RESTATED OPERATING AGREEMENT

**(See attached)**

00023

# FOUR STAR FINANCIAL SERVICES, LLC,
### A California limited liability company

This page constitutes a Signature Page to the Operating Agreement of Four Star Financial Services, LLC, a California limited liability company, as the same may be amended from time to time (the "Agreement").

The undersigned, a Member of Four Star Financial Services, LLC (the "Company") and a party to the Agreement, hereby consents to the adoption of the Agreement and agrees to be bound by all of the terms and conditions thereof, and consents to the continuation of the business of the Company upon a Termination Event (as defined in the Agreement) with respect to another Member pursuant to Section 6.1.3 of the Agreement, unless and until the undersigned shall revoke such consent in the manner set forth in Section 6.1 of the Agreement.

EXECUTED as of _____ **September** __14__, ~~XXX~~ 2001

*If subscriber is an individual:*

_____
Signature

_____
Name (please print)

*If subscriber is an entity:*

__Lipp Irr. Trust FBO Andrew Lipp__
Name of entity (please print)

By _____
Signature

**Susan Novick**
Name (please print)

**Trustee**
Title (please print)

*If subscribers are joint tenants, tenants-in-common or husband and wife as community property, both persons must sign:*

_____
Signature

_____
Name (please print)

_____
Signature

_____
Name (please print)

Ownership, issuance, transfer, encumbrance, attachment, hypothecation and any other disposition (including by operation of law or other legal process) of the Membership Interest represented by this Signature Page are restricted by and subject to the provisions of the Agreement, which is available for inspection at the principal office of the Company. Any transfer or disposition in violation of the Agreement is null and void. The Agreement is automatically binding upon any person who acquires this Membership Interest in the Company.

THE SECURITIES REPRESENTED BY THE AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 NOR REGISTERED OR QUALIFIED UNDER ANY STATE SECURITIES LAW. SUCH SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, DELIVERED AFTER SALE, TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS QUALIFIED OR REGISTERED UNDER APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR UNLESS, IN THE OPINION OF COUNSEL SATISFACTORY TO THE COMPANY, SUCH QUALIFICATION AND REGISTRATION IS NOT REQUIRED. ANY TRANSFER OF THE SECURITIES REPRESENTED BY THE AGREEMENT IS FURTHER SUBJECT TO OTHER RESTRICTIONS, TERMS AND CONDITIONS WHICH ARE SET FORTH HEREIN.

00024

# SUBSCRIPTION AGREEMENT

Four Star Financial Services, LLC
11755 Wilshire Blvd., Ste. 2150
Los Angeles, CA 90025

Ladies and Gentlemen:

The undersigned ("Subscriber") is delivering this Subscription Agreement to Four Star Financial Services, LLC, a California limited liability company (the "Company"), in connection with the Company's offering (the "Offering") of its Class B, C, D, E, F and G membership units ("Units") and Cash Flow Notes ("Notes") pursuant to a Private Placement Memorandum dated June 30, 1997 (the "Memorandum").

1.     **General.** Subscriber understands the following:

1.1     Class B and C Units are being offered only to prospective investors who are holders of Cash Flow Notes issued by 900 Capital Services, Inc. ("Capital Services"), to Affiliates (as defined below) of such prospective investors and to other persons specially designated by the Company. Class D, E, F and G Units are being offered to those persons and to all other prospective investors. Notwithstanding the foregoing, a Special Cash Flow Note Holder (as defined below) and the Special Cash Flow Note Holder's Affiliates may not purchase Units of any Class which has a higher priority return (as set forth in the table contained in Section 1.3 below) than the annual interest rate payable upon the Cash Flow Note held by such Special Cash Flow Note Holder. A "Special Cash Flow Note Holder" means a holder of a Cash Flow Note with respect to which Note a finder's fee or other commission is regularly paid by Capital Services, as indicated on the books and records of Capital Services. If Subscriber is a Special Cash Flow Note Holder, Subscriber has received a copy of a letter delivered by Capital Services to the Company stating that Subscriber is a Special Cash Flow Note Holder and indicating the rate of interest paid on Subscriber's Cash Flow Note. "Affiliates" means (a) each person or entity which, directly or indirectly, controls, or is controlled by, or is under common control with, Subscriber, (b) each person that is related to Subscriber by blood, marriage or adoption, but no more remote than a first cousin, and (c) the trustee of any trust created by or for the benefit of Subscriber or any of the foregoing relatives.

1.2     Each Unit will entitle its holder to certain distributions payable from Available Cash from Operations (as defined in the Company's Amended and Restated Operating Agreement), including a cumulative annual priority return equal to a percentage of the capital account attributable to such Unit (such percentage is set forth opposite the applicable Class in the table contained in Section 1.3 below).

1.3     Each Unit is being offered at a purchase price of $25,000. However, each Subscriber, alone or together with his, her or its Affiliates, must subscribe for a minimum number of Units, as set forth in the following table (the second column of this table sets forth the minimum purchase requirements applicable to Cash Flow Note holders and their Affiliates, and

the third column of this table sets forth the minimum purchase requirements applicable to all other investors):

| Class | Minimum Purchase for Cash Flow Note Holders and their Affiliates * | Minimum Purchase for Other Investors | Priority Return |
|-------|-------|-------|-------|
| B | 40 Units | ** | 18% |
| C | 20 Units | ** | 17% |
| D | 10 Units | 40 Units | 16% |
| E | 1 Unit | 20 Units | 15% |
| F | 1 Unit | 10 Units | 14% |
| G | 1 Unit | 1 Unit | 13% |

\*    But see limitations described above on the Classes that may be purchased by Special Cash Flow Note Holders.

\*\*    May not be purchased by other investors.

If the outstanding principal under a Cash Flow Note tendered for payment exceeds the purchase price for a Unit but is not in a whole multiple of such purchase price, Subscriber will be deemed to have elected to purchase a fractional Unit equal to such excess amount. Fractional Units may not otherwise be purchased, except with the written approval of management. Notwithstanding the assignment of Cash Flow Notes to the Company by Subscriber, prior to acceptance of the subscription by the Company, Subscriber will continue to be entitled to any interest paid on such Notes as well as any accrued but unpaid interest thereon as of the date of acceptance.

1.4    Each Note is offered in multiples of $5,000. The rate of interest payable with respect to each Note is determined by the Company at the time of issuance in its discretion, taking into account the needs of the Company for funds, the availability of funds from other sources, and prevailing market conditions. Upon completion of this Subscription Agreement and tentative acceptance by the Company, Subscriber will be advised of the applicable rate of interest. Subscriber may accept such rate or decline such rate; if the latter, Subscriber's money will be returned immediately. Notes are due and payable on a fixed due date determined by the Company at the time of issuance of the applicable Note. Subscriber understands that by the terms of the Note, the Company may not be permitted to pay the Note on the fixed due date but rather defer payment until the Available Cash Flow (as defined) is sufficient to permit payment in accordance with the terms of the Note.

1.5    This Subscription Agreement is subject to additional terms, covenants and conditions, as provided hereinafter.

00026

2.      **Subscription.** In accordance with the terms, covenants and conditions of this Subscription Agreement, Subscriber hereby irrevocably subscribes for and agrees to purchase Units in the numbers and Classes set forth on <u>Annex A</u> attached hereto or a Note in the amount set forth on <u>Annex A</u> attached hereto and tenders herewith the purchase price by the payment method set forth on <u>Annex A</u>.

Subscriber understands that Subscriber must tender the purchase price for the Units by either (or a combination) of the following options:

<u>Option 1</u>: Certified or cashier's check (or personal check approved by the Company)

> *Instructions: Subscriber must tender herewith a certified or cashier's check or personal check approved by the Company made payable to Four Star Financial Services, LLC.*

<u>Option 2</u>: Assignment of a Cash Flow Note issued by Capital Services.

> *Instructions: Subscriber must tender herewith the Cash Flow Note and a duly executed Irrevocable Assignment of Note in the form of <u>Exhibit A</u> attached hereto. If Subscriber has lost or misplaced the Cash Flow Note and despite a diligent search is unable to locate it, Subscriber may (in lieu of tendering the Cash Flow Note) complete, execute and deliver to the Company an Affidavit of Loss and Indemnity Agreement in the form of <u>Exhibit B</u> attached hereto.*

3.      **Representations and Warranties.** Subscriber hereby represents and warrants to the Company as follows:

3.1      The Units or Note, as applicable, are being acquired for Subscriber's own account, for investment purposes only, and not with a view toward resale, assignment or distribution thereof. The Units or Note are not being acquired by Subscriber as a nominee or agent for the benefit of any other person or entity.

3.2.      Subscriber understands that neither the Units nor the Note have been registered under the Securities Act of 1933, as amended (the "Securities Act"), nor have the Units been registered or qualified under the securities laws of any state, and no federal or state agency has made any finding or determination as to the fairness of this investment nor has made any recommendation or endorsement of the purchase of the Units or Note.

3

00027

3.3     Subscriber is an "Accredited Investor" as defined in Regulation D promulgated under the Securities Act ("Regulation D"), *or* Subscriber has, alone or together with Subscriber's Purchaser Representative (as defined under Regulation D), such knowledge and experience in financial and business matters that Subscriber is capable of evaluating the merits and risks of an investment in the Company.

3.4     Subscriber has been furnished with and has carefully read, understands and is familiar with the Memorandum and all exhibits thereto. Subscriber has had a fully opportunity to discuss with the Company and its managers all material aspects of investment in the Units or Note, including the opportunity to ask, and to receive answers to Subscriber's full satisfaction, regarding such questions as Subscriber has deemed necessary to evaluate this opportunity to invest. None of the information received by Subscriber is in any material respect different from or in addition to the information contained in the Memorandum.

3.5     Subscriber understands that investment in the Units or Note involves significant risks, some of which are described in the Memorandum, including the following: the Company has a limited operating history; transfer of the Units or Notes is subject to significant restrictions; there is no public market for the Units or Notes; investors must bear the economic risk of investment for an indefinite period of time; the Company may in the near future have to fund the pay-off of some or all of the Notes, the Company may be deemed to have assumed all of 900 Capital Services, Inc.'s liabilities; and if the Company is profitable the Managers will be entitled to substantial compensation, which will be paid to the Managers prior to distributions being made to Members. Subscriber has carefully considered the risks of investing in the Units or Note.

3.6     If Subscriber has utilized the services of a Purchaser Representative (as defined under Regulation D) in connection with Subscriber's proposed investment in the Units or Note , such Purchaser Representative assisted Subscriber in evaluating such investment and Subscriber has been advised by such Purchaser Representative concerning the merits and risks of the investment in general and the suitability of the investment in particular, and such Purchaser Representative has disclosed to Subscriber in writing any past, present or future material relationship, actual or contemplated, between the Purchaser Representative and its affiliates on the one hand and the Managers, the Company and their affiliates on the other hand, and any compensation received or to be received as a result of such relationship.

3.7     Subscriber has received, carefully reviewed, completed and is returning herewith to the Company the Questionnaire attached hereto as <u>Annex B</u> and, if Subscriber is not an Accredited Investor, the Questionnaire attached hereto as <u>Annex C</u>. Subscriber affirms that each response contained in such Questionnaire(s) is true and correct and understands that the Company will be relying on the accuracy of those responses. Subscriber agrees to provide to the Company, upon request, such information as may be reasonably requested by the Company to evaluate the responses contained in such Questionnaire(s).

3.8     Neither Subscriber nor Subscriber's professional advisors have been

4

furnished any offering literature on which they have relied other than the Memorandum.

3.9    If Subscriber is a corporation, partnership or other entity or is acting in the capacity of a trustee, (a) Subscriber has the requisite power to enter into this Subscription Agreement and to carry out its obligations hereunder, and (b) the execution and delivery of this Subscription Agreement and the consummation of the transactions contemplated hereby have been duly authorized by Subscriber.

3.10    Subscriber has duly executed this Subscription Agreement, and this Subscription Agreement is a valid and binding obligation of Subscriber enforceable in accordance with its terms.

3.11    If Subscriber is assigning one or more Cash Flow Notes of Capital Services, Inc., to the Company, Subscriber is the sole owner of such Notes, and has valid, good and marketable title to such Notes free and clear of any and all claims, liens, pledges, setoffs, counterclaims, charges, restrictions, encumbrances, security interests or other rights or interests of any person whatsoever.

4.    **Terms, Covenants and Conditions.** Subscriber acknowledges and agrees that this Subscription Agreement is subject to, and Subscriber is bound by, the following additional terms, covenants and conditions:

4.1    Subscriber's subscription is irrevocable until accepted or rejected by the Company in its sole discretion. HOWEVER, IF SUBSCRIBER'S STATE OF RESIDENCE IS FLORIDA, SUBSCRIBER MAY ELECT TO VOID ITS SUBSCRIPTION BY DELIVERING TO THE COMPANY WRITTEN NOTICE OF SUCH ELECTION WITHIN THREE (3) DAYS FOLLOWING SUBSCRIBER'S FIRST TENDER OF CONSIDERATION TO THE COMPANY.

4.2    Within fifteen (15) business days of the Company's receipt of Subscriber's subscription for Units, the Company will notify Subscriber whether the subscription has been rejected or accepted by the Company. If the Company does not timely notify Subscriber whether it has accepted or rejected the subscription, the subscription will automatically be considered to have been rejected. Upon rejection, the Company will return to Subscriber any funds and Cash Flow Notes it has received from Subscriber, without interest, and the Company and Subscriber will have no further obligations to each other. If the Company accepts the subscription, the Company will place the payment tendered by Subscriber directly into the Company's account.

4.3    Within fifteen (15) business days of the Company's receipt of Subscriber's subscription for a Note the Company will notify Subscriber whether the subscription has been rejected or tentatively accepted by the Company. If the Company does not timely notify Subscriber whether it has tentatively accepted or rejected the subscription, the subscription will automatically be considered to have been rejected. Upon rejection, the Company will return to Subscriber any funds and Cash Flow Notes of Capital Services, Inc., it has received from Subscriber, without interest, and the Company and Subscriber will have no further obligations to

00029

each other. If the Company tentatively accepts the subscription, the Company advise Subscriber of the proposed rate of interest and term of the Note. Within five (5) business days, Subscriber shall accept or reject the proposed rate and term. If Subscriber does not timely notify the Company whether it has accepted or rejected the proposed rate and term, the subscription will automatically be considered to have been accepted, and the Company will place the payment tendered by Subscriber directly into the Company's account. If Subscriber timely rejects the Company proposed rate and term, the Company may either propose a different rate or term (in which case the two preceding sentences shall again apply to the Company's proposed terms) or return to Subscriber any funds it has received from Subscriber, without interest, and the Company and Subscriber will have no further obligations to each other.

4.4     MANAGEMENT RESERVES THE RIGHT TO REJECT ANY SUBSCRIPTION IN WHOLE OR IN PART IN ITS SOLE DISCRETION.

4.5     Upon acceptance by the Company of Subscriber's subscription for Units, Subscriber will be automatically admitted as a "Member" of the Company and will be deemed to have agreed to be bound by the terms, covenants and conditions of the Amended and Restated Operating Agreement of the Company (the "Operating Agreement"). Without limiting the foregoing, Subscriber shall execute a signature page to such Operating Agreement.

4.6     The representations and warranties contained herein shall survive the closing of the transactions contemplated hereby. Subscriber shall promptly notify the Company by telephone and in writing if any representation and warranty contained herein becomes untrue prior to the date that the subscription is accepted by the Company.

4.7     Subscriber shall indemnify, defend and hold the Company and its managers, officers, members, employees, agents, legal representatives, successors and assigns harmless from and against any and all losses, judgments, fines, claims, liabilities, costs or expenses (including reasonable attorneys' fees) or other damages of any nature incurred by any of them which are caused by or arise out of the breach of any covenant or agreement made by Subscriber in this Subscription Agreement or out of any representation, warranty or statement made by Subscriber being untrue or misleading.

4.8     If Subscriber is a corporation, partnership or other entity or is acting in the capacity of a trustee, Subscriber shall deliver herewith to the Company a true and correct copy of Subscriber's charter documents (e.g., Articles of Incorporation and Bylaws, if a corporation; partnership agreement, if a partnership; trust agreement, if a trustee) and of the resolutions of Subscriber authorizing this subscription, if such resolutions are required by law or by Subscriber's charter documents.

5.      General Provisions.

5.1     This Subscription Agreement and any documents referred to herein or executed contemporaneously herewith constitute the parties' entire agreement with respect to the subject matter hereof and supersede all agreements, representations, warranties, statements,

00030

promises and understandings, whether oral or written, with respect to the subject matter hereof. This Subscription Agreement may not be amended, altered or modified except by a writing signed by the parties. Subscriber agrees to execute, acknowledge and deliver any and all further documents and writings and to perform such other actions which may be or become necessary or expedient to effectuate and carry out this Subscription Agreement.

      5.2    Except as expressly indicated herein to the contrary, none of the provisions of this Subscription Agreement shall be for the benefit of, or enforceable by, any third-party beneficiary. Subscriber may not assign any of its rights under this Subscription Agreement without the prior written consent of the Company. Except as provided herein to the contrary, this Subscription Agreement and the respective rights, obligations and remedies of the parties hereunder shall be binding upon and inure to the benefit of the parties, their respective successors and permitted assigns. This Subscription Agreement, the respective rights, obligations and remedies of the parties hereunder, the interpretation hereof and all disputes, controversies and claims arising out of or related to this Subscription Agreement or the relationship between the parties created hereby shall be governed by and construed in accordance with the internal laws of the State of California, without reference to its principles of conflict of laws.

      5.3    The validity, legality or enforceability of the remainder of this Subscription Agreement will not be affected even if one or more of the provisions of this Subscription Agreement will be held to be invalid, illegal or unenforceable in any respect. All Annexes and Exhibits attached hereto are hereby incorporated in and made a part of this Subscription Agreement as if fully set forth herein. The headings in this Subscription Agreement are inserted for convenience, and in no way define, limit or interpret the scope of this Subscription Agreement or any particular section. This Subscription Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[balance of page intentionally blank]

00031

IN WITNESS WHEREOF, Subscriber has duly executed and delivered this Subscription Agreement as of this ___14___ day of __September, 2001

*If Subscriber is an individual:*                     *If Subscriber is an entity:*

                                                  **Lipp Irr. Trust FBO Andrew Lipp**
_____                        Name of entity (please print)
Signature

                                                  By _Susan Novick_
_____                        Signature
Name (please print)

                                                  **Susan Novick**
                                                  Name (please print)

                                                  **Trustee**
                                                  Title (please print)

*If Subscribers are joint tenants, tenants-in-common or husband and wife as community property, both persons must sign:*

_____                        _____
Signature                                              Signature

_____                        _____
Name (please print)                                    Name (please print)

**IMPORTANT: YOU MUST FOLLOW THE SUBSCRIPTION INSTRUCTIONS THAT ACCOMPANY THE OFFERING MATERIALS.**

\* \* \* \* \* \* \* \* \* \* \* \*

**IF SUBSCRIBER'S STATE OF RESIDENCE IS FLORIDA, SUBSCRIBER MAY ELECT TO VOID ITS SUBSCRIPTION BY DELIVERING TO THE COMPANY WRITTEN NOTICE OF SUCH ELECTION WITHIN THREE (3) DAYS FOLLOWING SUBSCRIBER'S FIRST TENDER OF CONSIDERATION TO THE COMPANY.**

00032

## ACCEPTANCE OF SUBSCRIPTION

The Company hereby accepts the subscription for Units described in Annex "A" attached hereto by __CLPP IRR TRUST FBO ANDREW CLPP__
<span style="font-size:small">Name of Subscriber</span>

Dated: __AUGUST 31__, __2000__

FOUR STAR FINANCIAL SERVICES,
LLC, a California limited liability company

By: _____
Ronald I. Anson
Manager

By: _____
Mark F. Cohn
Manager

By: _____
Jack E. Garrett
Manager

00033

# ANNEXES TO
# SUBSCRIPTION AGREEMENT

**(See attached)**

00034

**ANNEX A**
**TO SUBSCRIPTION AGREEMENT**

**SUBSCRIPTION**

☐ Subscriber hereby subscribes for Units in the following numbers and Classes:

| Purchase price per Unit per Class | Number of Units per Class | Total purchase price for Units in each Class |
|---|---|---|
| $25,000 | x _.80_ Class B Units | = $ _20,000_ |
| $25,000 | x _____ Class C Units | = $ _____ |
| $25,000 | x _____ Class D Units | = $ _____ |
| $25,000 | x _____ Class E Units | = $ _____ |
| $25,000 | x _____ Class F Units | = $ _____ |
| $25,000 | x _____ Class G Units | = $ _____ |
| | TOTAL PURCHASE PRICE | $ _20,000_ |

☐ Subscriber hereby subscribes for a Cash Flow Note in the amount of $ _____ (multiples of $5,000 only).

*Note: If any of Subscriber's Affiliates are subscribing for Units or Cash Flow Notes, print the name of such Affiliate and describe how such person or entity is affiliated with Subscriber:*

_____

_____

*Note: Each Affiliate must complete a separate Subscription Agreement.*

_____

Subscriber hereby tenders the following in payment of the total purchase price set forth above:

Cashier's or certified check or approved personal check in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _20,000_

Assignment of 900 Capital Services, Inc. Cash Flow Note(s) with face amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

TOTAL PAYMENT $ _20,000_

i

00035

## ANNEX B
## TO SUBSCRIPTION AGREEMENT

### GENERAL QUESTIONNAIRE

☐    Subscriber is *[please initial each category applicable to Subscriber]*:

_____        Individual

_____        Joint tenants with rights of survivorship

_____        Husband and wife as community property

_____        Tenants-in-common

_____        Corporation

_____        General partnership

_____        Limited partnership

_____    Limited liability company

_____        Other entity *[indicate type of entity]*: _____

_____    Trust  *[If this category is initialed, set forth below the type of trust (e.g., revocable, business, pension, etc.), and, unless the trust is a pension trust, the names of the grantors, the names of the beneficiaries and the beneficial interests of each beneficiary (excluding contingent interests)]*:

Type of Trust:   **Irrevocable Trust**_____

Names of Grantors:   **Robert and Diane Lipp**_____

| Name of Beneficiary | Percentage Interest |
|---|---|
| Andrew Lipp | 100% |
|  |  |
|  |  |
|  |  |

ii

00036

☐      Subscriber is *[please initial each category applicable to Subscriber]*:

_____ (1)    Natural person whose individual net worth, or joint net worth with such person's spouse, exceeds $1,000,000

_____ (2)    Natural person who has an individual income in excess of $200,000 in each of the two most recent years or joint income with the person's spouse in excess of $300,000 in each of those years, and who has a reasonable expectation of reaching the same income level in the current year

_____ (3)    Executive officer or manager of the Company

_____ (4)    Bank as defined in Section 3 (a) (2) of the Securities Act of 1933, as amended (the "Securities Act")

_____ (5)    Savings and loan association or other institution as defined in Section 3 (a) (5) (A) of the Securities Act whether acting in its individual or fiduciary capacity

_____ (6)    Broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934

_____ (7)    Insurance company as defined in Section (2) (13) of the Securities Act

_____ (8)    Investment company registered under the Investment Company Act of 1940

_____ (9)    Business development company as defined in Section 2 (a) (48) of the Investment Company Act of 1940

_____ (10)    Private business development company as defined in Section 202(a) (22) of the Investment Company Act of 1940

_____ (11)    Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301 (c) or (d) of the Small Business Investment Act of 1958

_____ (12)    Plan established and maintained by a state, its political subdivisions, or an agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000

_____ (13)    Employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974 (a) the investment decision of

00037

which plan is made by a plan fiduciary, as defined in Section 3(21) of the Securities Act, which is either a bank, savings and loan association, insurance company or registered investment advisor, (b) which plan has total assets in excess of $5,000,000, or (c) if a self-directed plan, the investment decisions of which plan are made solely by persons that are Accredited Investors

_____ (14)  Organization described in Section 501(c) (3) of the Internal Revenue Code of 1986, as amended, not formed for the specific purpose of acquiring any of the Units or a Cash Flow Note offered, with total assets in excess of $5,000,000

_____ (15)  Corporation not formed for the specific purpose of acquiring any of the Units or a Note offered, with total assets in excess of $5,000,000

_____ (16)  Massachusetts or similar business trust not formed for the specific purpose of acquiring any of the Units or a Note offered, with total assets in excess of $5,000,000

_____ (17)  Partnership not formed for the specific purpose of acquiring any of the Units or a Note offered, with total assets in excess of $5,000,000

_____ (18)  Trust with total assets in excess of $5,000,000 not formed for the specific purpose of acquiring any of the Units or a Note offered, whose purchase is directed by a "sophisticated person," as that term is described in Rule 506(b)(2)(ii) of Regulation D promulgated under the Securities Act

_____ (19)  Entity in which each of the equity owners satisfies at least one of the eighteen categories described above *[If only this category is initialed, please set forth below (use an additional sheet if necessary) each equity owner and the category such owner satisfies]*

| Name of Equity Owner | Category (by number) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

iv

00038

| | |
|---|---|
| | |

☐     *[Please initial the appropriate category below that correctly describes the application of the following statement to your situation]* Subscriber is not a nonresident alien for purposes of United States income taxation, and is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code of 1986, as amended and the Treasury regulations thereunder) .

_____    True

_____    False

*[If the "False" category is initialed, please notify Jack Garrett at (310) 477-5252 as soon as possible].*

☐     *[Please initial the appropriate category below that correctly describes the application of the following statement to your situation]* Subscriber is not (i) an organization described in sections 401(a) or 501(c) of the Internal Revenue Code of 1986, as amended (the "Code") and exempt from taxation under section 501(a) of the Code or (ii) a trust described in section 664 of the Code.

_____    True

_____    False

*[If the "False" category is initialed, please notify Jack Garrett at (310) 477-5252 as soon as possible].*

☐     *[If Subscriber is an entity, please initial the appropriate category below that correctly describes the application of the following statement to its situation]* Subscriber was not organized or reorganized for the specific purpose of acquiring the Units or a Note and has made investments prior to the date hereof, and each beneficial owner thereof has and will share in the same proportion in each investment:

_____    True

_____    False

*[If the "False" category is initialed, please set forth in the table provided at the top of the next page (use an additional page if necessary) each equity owner and the percentage interest that the owner has in such entity. IN ADDITION, EACH SUCH EQUITY OWNER WILL BE REQUIRED TO SUBMIT A SEPARATE SUBSCRIPTION AGREEMENT.]*

v

00039

| Name of Equity Owner | Percentage Interest |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

☐    If Subscriber is related to, or has an equity or beneficial interest in, any other person or entity who is subscribing for Units or a Note, please set forth the name of that subscriber and the nature of the relationship or interest:

_____

_____

_____

_____

_____

☐    Subscriber's mailing address is:

**10573 West Pico Blvd., #65**

Street or P.O. Box

**Los Angeles**        **CA**        **90064**

City                State        Zip Code

Attention

Facsimile: Area Code    Number

☐    Subscriber's Taxpayer Identification Number, if any, is: _____

☐    Subscriber's Social Security Number, if any, is: _____